IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOHN F. BOHOVICH, | : | CIVIL ACTION NO. **3:CV-06-1710** |
| | : | |
| Plaintiff | : | (Judge Caputo) |
| | : | |
| v. | : | (Magistrate Judge Blewitt) |
| | : | |
| MICHAEL J. ASTRUE, | : | |
| Commissioner of | : | |
| Social Security, | : | |
| | : | |
| Defendant | : | |

**REPORT AND RECOMMENDATION**

This is a Social Security disability case pursuant to § 1383(c)(3). The Plaintiff, John F. Bohovich, is seeking review of the decision of the Commissioner of Social Security ("Commissioner")[1] which denied his claim for Disability Insurance Benefits ("DIB") under Title XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 1381-1383f.

**I.  PROCEDURAL HISTORY.**

The Plaintiff filed an application for DIB on January 27, 2005, alleging an inability to work since January 1, 1998, due to hypertension, hypoglycemia, hyperlipidemia, and an anxiety related disorder.  His claim was initially denied, and a timely request for a hearing was filed.  A hearing was conducted before an Administrative Law Judge ("ALJ") on February 21, 2006. Plaintiff, who was represented by counsel, testified, as well as a vocational expert ("VE").  Plaintiff was

---

[1]We find that, since Michael J. Astrue is the new Commissioner and succeeded Joanne Barnhart as Commissioner, he is automatically substituted as the Defendant herein. *See* Fed. R. Civ. P. 25(d)(1).

denied benefits pursuant to the ALJ's decision of April 7, 2006. (R. 8-16). The ALJ issued a decision finding that Plaintiff was not disabled under the Act.

The Plaintiff requested review of the ALJ's decision by the Appeals Council. Said request for review was denied on July 13, 2006, thereby making the ALJ's decision the "final decision" of the Commissioner. (R. 3-5). 42 U.S.C. § 405(g). That decision is the subject of this appeal.

In compliance with the Procedural Order issued in this matter, the parties have filed briefs in support of their respective positions. (Docs. 6 & 8). The Plaintiff has also filed a reply brief. (Doc. 9).

## II. STANDARD OF REVIEW.

When reviewing the denial of Social Security Disability Insurance benefits, we must determine whether the denial is supported by substantial evidence. *Brown v. Bowen*, 845 F.2d 1211, 1213 (3rd Cir. 1988); *Mason v. Shalala*, 994 F.2d 1058 (3rd Cir. 1993). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552 (1988); *Hartranft v. Apfel*, 181 F.3d 358, 360. (3d Cir. 1999). It is less than a preponderance of the evidence but more than a mere scintilla. *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

To receive disability benefits, the Plaintiff must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 432(d)(1)(A). Furthermore,

> [a]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.  For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

42 U.S.C. § 423(d)(2)(A).

## III. ELIGIBILITY EVALUATION PROCESS.

A five-step evaluation process is used to determine if a person is eligible for disability benefits.  *See* 20 C.F.R. § 404.1520 (1990).  *See also Plummer v. Apfel*, 186 F.3d 422, 428 (3d Cir. 1999);  *Sassone v. Soc. Sec. Comm.*, 165 Fed. Appx. 954 (3d Cir. 2006)(Non-Precedential).  If the Commissioner finds that a Plaintiff is disabled or not disabled at any point in the sequence, review does not proceed any further.  20 C.F.R. §§ 404.1520, 416.920 (1995).

The first step of the process requires the Plaintiff to establish that he has not engaged in "substantial gainful activity."  *See* C.F.R. §§ 404.1520(b), 416.920(b). The second step involves an evaluation of whether the Plaintiff has a severe impairment. *See* 20 C.F.R. §§ 404.1520(c), 416.920(c). The Commissioner must then determine whether the Plaintiff's impairment or combination of impairments meets or equals those listed in Appendix 1, Subpart P, Regulation No. 4.

If it is determined that the Plaintiff's impairment does not meet or equal a listed impairment, the Commissioner must continue with the sequential evaluation process and consider

3

whether the Plaintiff establishes that he is unable to perform his past relevant work. *See* 20 C.F.R. § 404.1520(e), 416.920(e). The Plaintiff bears the burden of demonstrating an inability to return to his past relevant work. *Plummer*, 186 F.3d at 428. Then the burden of proceeding shifts to the Commissioner to demonstrate that other jobs exist in significant numbers in the national economy that the Plaintiff is able to perform, consistent with his medically determinable impairments, functional limitations, age, education and past work experience. 20 C.F.R. §§ 404.1520(f), 416.920(f). This is step five, and at this step, the Commissioner is to consider the Plaintiff's stated vocational factors. *Id.*

The ALJ proceeded through each step of the sequential evaluation process and concluded that the Plaintiff was not disabled within the meaning of the Social Security Act. (R. 16). In reaching this determination, the ALJ first found that Plaintiff had not engaged in substantial gainful work activity since his alleged onset date. (January 1, 1998). (R. 12, ¶ 1.). The ALJ determined the medical evidence of record established Plaintiff's anxiety-related disorder was a severe mental impairment; however, Plaintiff's physical ailments were not severe for the purposes of determining disability. (R. 12, ¶ 2.). In light of this, the ALJ ruled that Plaintiff did not have an impairment, or combination of impairments, severe enough to meet or equal the criteria for establishing disability under the listed impairments as set forth in Appendix 1, Subpart P, Regulations No. 4. (R. 12-13, ¶ 4.).

The ALJ then evaluated Plaintiff's evidence supporting his contention of an inability to perform past work experience. The ALJ noted that Plaintiff's hypertensive symptoms were well controlled by his current medication. (R. 14, ¶ 5.). Further, the ALJ considered that Plaintiff was not

undergoing any treatment for his psychiatric condition at the time of the hearing, and that the Disability Determination Service opined Plaintiff's mental impairments were not severe and did not cause any external limitations. *Id*. The ALJ found that Plaintiff's subjective complaints and limitations were inconsistent with the clinical and diagnostic findings of the record. (R. 14, ¶ 7.). In doing so, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform simple, routine work at any exertional level with no use of ladders and which would allow the worker to avoid hazards. (R. 14, ¶ 6.). The ALJ concluded, however, that Plaintiff had no relevant work history and as such Plaintiff did not have the residual functional capacity to perform any past relevant work. *Id*. The ALJ also concluded that Plaintiff was a younger person under the Regulations who had a 12th grade education. (R. 15, ¶ 8.). Thus, the ALJ found that the Plaintiff met his burden at Step Four, and the inquiry moved to Step Five.

As discussed above, at Step Five, the Commissioner had the burden of demonstrating that the Plaintiff is capable of performing other jobs existing in significant numbers in the national economy. 20 C.F.R. § 404.1520(f), 416.920(f). The final and fifth step requires an analysis of whether the Plaintiff, based on his age, experience, education, and residual functional capacity and limitations, can perform any other work in the national economy. *See Plummer v. Apfel*, 186 F.3d at 428; *Burnett v. Comm. of SSA*, 220 F.3d 112, 126 (3d Cir. 2000). Thus, at this step, the Commissioner must demonstrate that the Plaintiff is capable of performing other available work in order to deny a claim of disability. 20 C.F.R. § 404.1520(f); *Plummer*, 186 F.3d at 428. In making a disability determination, the ALJ must analyze the cumulative effect of all of the Plaintiff's impairments. 20 C.F.R. § 404.1523; *Plummer, supra*. Based on the testimony of an impartial

vocational expert (Calvin Anderson), the ALJ concluded that, considering the Plaintiff's age, educational background, work experience, and residual functional capacity, he was capable of making a successful adjustment to work that exists in significant numbers in the national economy. (R. 14-15, ¶ 7.).  Specifically, the vocational expert testified that a hypothetical individual with Plaintiff's background and restrictions could work as a machine tender, packer, and assembler. (R. 15, ¶ 7.).  Thus, Plaintiff was found to be not disabled.  (R. 16).

Additionally, the ALJ found Plaintiff was not disabled pursuant to paragraph 204.00. (R.15, ¶ 9.), 20 C.F.R. § 404, Subpt. P, App. 2, Rule 204.00.  The ALJ noted that Plaintiff was a 43 year-old younger individual with a 12th grade education and no transferable vocational skills.  As such, assuming Plaintiff can work at any exertional level, Rule 204 would require Plaintiff be found not disabled. (R. 15, ¶ 9.).[2]

The relevant time period for this case is January 1, 1998 (alleged onset date of disability) (R. 15, ¶ 10.), through April 7, 2006 (date of ALJ's decision). (R. 11-16).

---

[2] The residual functional capacity to perform heavy work or very heavy work includes the functional capability for work at the lesser functional levels as well, and represents substantial work capability for jobs in the national economy at all skill and physical demand levels. Individuals who retain the functional capacity to perform heavy work (or very heavy work) ordinarily will not have a severe impairment or will be able to do their past work--either of which would have already provided a basis for a decision of "not disabled". Environmental restrictions ordinarily would not significantly affect the range of work existing in the national economy for individuals with the physical capability for heavy work (or very heavy work). Thus an impairment which does not preclude heavy work (or very heavy work) would not ordinarily be the primary reason for unemployment, and generally is sufficient for a finding of not disabled, even though age, education, and skill level of prior work experience may be considered adverse.  20 C.F.R. § 404, Subpt. P, App. 2, Rule 204.00.

## IV.  DISCUSSION.

This appeal involves the denial of Plaintiff's application for DIB.  Plaintiff filed his application for DIB in January 2005, which was denied in April 2006, by the decision of an ALJ. The issue in this case is whether substantial evidence supports the Commissioner's decision that the Plaintiff was not disabled.

While the ALJ found that the Plaintiff had a severe mental impairment, namely, an anxiety disorder (R. 18), she determined that the impairments did not meet or medically equal a listed impairment.  (R. 18).  The Plaintiff contends that the ALJ erred by failing to adequately explain why Plaintiff's mental impairments did not meet or equal any listings.  The Plaintiff argues that the ALJ erred in finding Plaintiff had the residual functional capacity to perform work at any exertional level.   The Plaintiff also contends that the ALJ erred when she found Plaintiff was not disabled pursuant to Rule 204.00.  Finally, Plaintiff argues that the ALJ erred in asking the vocational expert a hypothetical question that did not include all of his impairments.

### A.  Background

The Plaintiff was born on July 16, 1954. (R. 132).   He was 43 years old at the time of the alleged onset date.  (R. 15, ¶ 8.).   Thus, Plaintiff is a younger individual under the Regulations. *See* 20 C.F.R. § 404.1563.  He has a high school education and he can read, write, and do basic arithmetic.  (R. 133-134).  Transferability of skills from his past relevant work is not an issue due to his lack of past relevant work experience.  (R. 153).  The Plaintiff has not been engaged in substantial gainful activity since his alleged onset date. (R. 12, ¶ 1.).  The Plaintiff alleges that he is unable to work because of hypertension, hypoglycemia, hyperlipidemia, frequent urination and an

7

anxiety related disorder. (R. 11).  The ALJ found that the Plaintiff had a severe mental impairment but no severe physical impairments. (R. 12, ¶ 2.).   The ALJ also determined that the Plaintiff retained the residual functional capacity to perform simple and routine work at any exertional level which does not include use of a ladder and allows Plaintiff to avoid hazards. (R. 14,  ¶ 5.).  Finding that a significant number of such jobs exist in the national economy based on the testimony of an impartial vocational expert at the hearing, the ALJ held that the Plaintiff was not disabled within the meaning of the Social Security Act.  (R. 15, ¶'s 7 & 10).

### B. Medical Evidence

On appeal, Plaintiff makes the general assertion that the ALJ erred in not adequately explaining why his mental impairment did not meet the disability requirement, and erred in finding that he could perform work at any exertional level because these decisions are not supported by substantial evidence.  Plaintiff's specific contentions are stated above.

Plaintiff testified that he is being treated for high blood pressure, hypoglycemia, and high cholesterol. (R. 136).  Plaintiff takes Avalide and Avapro to control his hypertension, but takes no other medications (R. 141-143).  He admitted that the medications have been effective in treating his hypertension. (R. 141).  He has not been hospitalized or treated for a hypoglycemic attack. (R. 142).  Additionally, Plaintiff is a vegetarian and has removed most fried foods from his diet to combat his medical afflictions. *Id*.  He complains of sluggishness, upset stomach, and the need urinate frequently as a result of the medications. (R. 141-143). Plaintiff says that he has not been able to attend church services in the last couple of years because the need to urinate twice per service precludes him. (R. 137, 144-145).  Plaintiff handles his personal care, bathing, grooming,

8

and laundry. (R. 136). He does not have problems using his arms or legs other than fatigue. (R. 139). Plaintiff can sit for an unlimited time period, but says he can stand for a maximum of thirty minutes. (R. 140). He testified that he is able to walk a maximum of a few blocks. *Id*.

Plaintiff has a drivers license. (R. 134). He admitted to being able to drive when necessary, but testified doing so makes him anxious and nervous, causing panic attacks. (R. 134, 147). He spends a maximum of one hour per week riding in a car to the library. (R. 135) Plaintiff has limited patience when asked to perform multiple tasks, yet entering department stores does not make him nervous. (R. 147-148).

The limited amount of medical evidence available shows that Plaintiff suffers from physical ailments that are currently controlled by proper medication. The results of a chest x-ray performed on October 13, 1999, showed no abnormalities in the Plaintiff's chest. (R. 87). Dr. Joseph Mussoline, Plaintiff's treating physician, ordered a functional capacity evaluation of Plaintiff at St. Luke's Sports and Rehabilitation on January 30, 2004. (R. 90-92). Plaintiff's main complaints were generalized nonspecific body and leg fatigue, intermittent shortness of breath, and right eye pain. (R. 90). Plaintiff was able to lift a 50-pound weight 30 times during the evaluation. (R. 92).[3] Participation in a fitness program or a conditioning/hardening program was recommended to correct Plaintiff's gross body deconditioning. *Id*.

On May 25, 2005, Plaintiff underwent a comprehensive consultative examination performed by Dr. Mian Shahid. (R. 13, 93-95). Dr. Shahid determined Plaintiff's hypertension was

---

[3]The January 30, 2004, evaluation of Plaintiff supported the ALJ's finding that Plaintiff could perform routine work at any exertional level.

well controlled by medication and noted a history of hypoglycemic events. (R. 95). Dr. Shahid was of the opinion that Plaintiff could carry and lift twenty pounds in a work setting. Moreover, he believed that Plaintiff had no limitation on his ability to sit, but opined that Plaintiff should not stand for more than three hours or walk for more than two blocks. Finally, Dr. Shahid determined twenty-five pounds to be the maximum weight for Plaintiff to push or pull.[4]

On June 10, 2005, Plaintiff underwent a psychiatric review by James Cunningham, Ed.D. Dr. Cunningham determined that Plaintiff had an anxiety-related disorder and that the disorder was non-severe. (R. 98). Plaintiff's condition did not precisely satisfy the diagnostic criteria of Listing 12.06(a), so Plaintiff was diagnosed with an anxiety disorder NOS (not otherwise specified). (R. 103). Dr. Cunningham determined that Plaintiff's condition led to only a mild restriction on the activities of daily living, while not restricting Plaintiff's social functioning, concentration, persistence, pace, nor leading to decompensation. (R. 108). Dr. Cunningham also decided that the evidence did not establish the presence of the criteria in Listing 12.06(c). (R. 109). It is important to note that Dr. Cunningham stated that, based on the evidence of record, Plaintiff's statements were found to be only partially credible. (R. 110).

Examination notes from Dr. Mussoline were also entered into evidence; however, they seem to contain only Plaintiff's subjective complaints. Plaintiff complained of fatigue, intolerance of stress, and the need to urinate frequently. (R. 124-125). Despite requesting additional time to supplement these notes, Plaintiff's attorney produced no further evidence. (R. 150).

---

[4] This evaluation occurred less than a year after Plaintiff completed 40 repetitions at 25 lbs., 25 repetitions at 40 lbs., and 30 repetitions at 50 lbs. in a materials packing simulation. (R. 91-92)

### C. Vocational Expert

A vocational expert (Mr. Anderson) testified at the administrative hearing. (R. 152-154). The vocational expert testified that at the time of the hearing Plaintiff would be approaching advanced age and has a high school education. (R. 152). The vocational expert agreed with the ALJ's assessment that Plaintiff had no past relevant work history. (*Id.*). Moreover, he concluded that Plaintiff does not possess any transferable skills. (R. 153). The vocational expert testified that an individual of Plaintiff's age, education, and past work experience, who retained a capacity to perform work at any exertional level, could perform jobs in the regional and national economy, even when the jobs were limited to settings that allowed the worker to avoid hazards and did not require ladder use. (*Id.*). The vocational expert cited basic assembly, packing, and machine tending positions as examples of such positions. (R. 153-154). However, the vocational expert conceded that if a hypothetical person with Plaintiff's stated age, education, and experience would require breaks in excess of the normal two per day plus lunch, and/or may be subject to absences in excess of three per month, there would be no positions available for this person in the national or regional economy.

### D. Analysis

Before we review the merits of the case, we will first address Defendant's arguments about the effects of Plaintiff's previous claim. Defendant argues that the decision in Plaintiff's previous case establishes as a matter of law that Plaintiff was not disabled prior to January 27, 2005. We disagree with this contention. The ALJ, in the case at bar, based her decision on the time

period from January 1, 1998, alleged disability onset date, to the date of her decision.  As such, we shall review the same period.[5]

Plaintiff requests that the instant decision of the Commissioner denying his claim for DIB benefits be reversed because of several errors, detailed above, he claims were committed by the ALJ.  (Doc. 6, p. 6).  Specifically, Plaintiff, in part, argues that the ALJ's finding that he has a severe mental impairment but that it did not meet or equal Listing 12.06 was in error.  Plaintiff contends that the ALJ did not sufficiently develop the record for meaningful review as required by the Third Circuit. *See Burnett v. Commissioner of Social Sec. Admin.*, 220 F.3d 112, 119-120 (3d. Cir. 2000)(requiring the ALJ to discuss the evidence and explain the reasoning employed in reaching their ultimate conclusion for step three so that meaningful review of the decision can occur on appeal); *Jones v. Barnhart*, 364 F.3d 501, 505 (3d. Cir. 2004)(stating there is no particular format required, rather that *Burnett* was intended to "ensure that there is sufficient development of the record and explanation of findings to permit meaningful review").  Plaintiff notes that the ALJ found him to suffer from an anxiety related disorder[6] and that the ALJ evaluated the 12.06(b) criteria. However, Plaintiff argues that the ALJ did not mention any of the 12.06(c) criteria, which, if satisfied, act as an alternative to 12.06(b) in finding an individual disabled.  Plaintiff claims that since the ALJ did not mention 12.06(c), the record was not sufficiently developed for the purposes of meaningful review.

----

[5]In the previous case, the ALJ found Plaintiff was not disabled from January 1, 1998 to January 26, 2005; however, as noted above, the ALJ in our case examined from the alleged onset date, January 1, 1998, until the date of her decision, April 7, 2006.  Therefore, we will review the same period.

[6]Plaintiff contends that this satisfied 12.06(a).

Defendant argues that Plaintiff's claim is "uniquely meritless." (Doc 8, p. 7). Defendant contends that, based on the medical evidence of record, Plaintiff could not satisfy 12.06(c). Defendant contends that Dr. Cunningham's evaluation of Plaintiff's anxiety disorder as non-severe shows that Plaintiff's condition did not meet 12.06(c). Moreover, Defendant argues that Plaintiff's lack of counseling and lack of other medical treatment for his anxiety condition, as well as Plaintiff's admission that he believes his condition is under control without help, demonstrates that Plaintiff's mental impairment did not meet 12.06(c).

In his Reply Brief, Plaintiff argues that Defendant did not dispute his contention that the ALJ did not mention 12.06 (c), and that Defendant engaged in a personal review of 12.06(c). We agree with Plaintiff that Defendant explained in detail why his condition did not meet 12.06(c), but we reject Plaintiff's argument that the ALJ failed to develop the record for meaningful review. While the ALJ explicitly rejected all of the factors of 12.06(b) and did not mention 12.06(c), we find that she did not err in making her decision that Plaintiff's mental condition did not meet a Listing. In *Jones, supra,* the Court upheld the decision of an ALJ because the decision, read as a whole, demonstrated that the ALJ considered appropriate factors in reaching the conclusion that Plaintiff did not meet the requirements of the listing. 364 F.3d at 505. In the case at bar, the ALJ stated that she reviewed section 12.00, *et. seq.*, and found a preponderance of medical evidence supporting the conclusion that Plaintiff's mental impairment imposed no functional restriction on the activities of his daily living. (R. 13).[7] Further, the *Jones* case rejected the contention that the ALJ must review

---

[7] As discussed above, we find that both Plaintiff's testimony and Dr. Cunningham's psychiatric review support this finding of the ALJ

all evidence in the record and provide an adequate explanation for rejecting evidence. 364 F.3d at 505.  When the ALJ in our case reviewed Listing 12.00, she reviewed section 12.06(c) in addition to the other requirements. (R. 13).  By finding that Plaintiff's mental impairment was not severe enough to meet or equal the requirements of any of the listed impairments, the ALJ determined Plaintiff did not satisfy 12.06(c).  The ALJ specifically referenced the findings of Dr. Cunningham's report which concluded that Plaintiff's anxiety impairment was not severe. (R. 98).  It is only logical that if one has no limitations on their performance of activities of daily living, and only a mild degree of limitation with regard to social activities, concentration, persistence, or pace, one would be able to function independently outside the area of one's home.  Indeed, Plaintiff testified that he could tolerate going to a department store. (R. 147-148).  By stating what Plaintiff could and could not do, the ALJ's decision, when taken as a whole, sufficiently developed the record for meaningful review.

Additionally, Dr. Cunningham's report, which the ALJ reviewed in making her decision, explicitly stated that Plaintiff failed to meet the requirements of 12.06(c). (R. 109).  This evidence is a reviewable part of the record and, as the only psychological evidence available, is a factor the ALJ logically considered and relied upon.  This further supports the ALJ's decision when it is viewed as a whole. *See Jones*, 364 F.3d at 505.

Secondly, Plaintiff contends that the ALJ erred in assessing Plaintiff's residual functional capacity to include work at any exertional level.  Plaintiff argues that Dr. Shahid's report is consistent with a capacity for light work.  Plaintiff believes that there was no evidence supporting

the ALJ's finding that he could perform work at any exertional level, and requests the decision be rejected in favor of a limited range of light work. (Doc. 6, p. 9).

Defendant counters that this argument is of little significance because, given Plaintiff's age, education, and past work history, even limited to light work, Plaintiff would still not be considered disabled. Additionally, Defendant notes that the vocational expert limited the jobs he was identifying to those requiring medium exertion or less. (Doc. 8, p. 9). Defendant argues that Plaintiff's appeal should be denied because, even when limited to light work, the result of the case would still be the same. *(Id.)*. Furthermore, the Defendant points out that Plaintiff admitted to being capable of lifting 50 pounds and that he did so in his first RFC assessment. *(Id.)*.

We find that substantial evidence supports the Vocational Expert's testimony and the ALJ's decision that Plaintiff was capable of performing work in sufficient numbers regionally and nationally. Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla. *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427 (1971). Dr. Mussoline's January 1, 2004, functional capacity evaluation provides such evidence to support the ALJ's decision. (R. 90-92). In the evaluation, Plaintiff claimed to be able to lift up to 50 pounds. (R. 90). Indeed, Plaintiff lifted 40 pounds 25 times and completed 30 repetitions at 50 pounds in a materials packaging simulation. (R.91-92). This evidence supports the finding that Plaintiff is not disabled and is eligible for 2,000 positions in the Commonwealth at the medium exertion level and lower exertional levels.[8] (R. 153). While we do not find any evidence that Plaintiff was capable of

---

[8]"Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we

exertion above the medium level, we find substantial evidence to support the ALJ's finding that the Plaintiff was not disabled under the Act.

Plaintiff also argues that the ALJ erred in finding him not disabled pursuant to Rule 204.00. Plaintiff contends that it was a mistake for the ALJ to rely on Rule 204.00, because it only applies to individuals who are capable of performing work at the heavy, or very heavy, exertional level. Plaintiff also states that the ALJ found that he suffered from a non-severe mental impairment which should preclude application of the guidelines. (Doc. 6, p. 9).

The defendant contends, and we agree, that the ALJ only cited Rule 204.00 as an alternative holding. Aside from using the word "additionally," the ALJ explicitly stated that "*assuming* the capacity to perform work at any exertional level," Rule 204.00 directs a finding of not disabled. (R. 15)(emphasis added). The ALJ's decision was based on the Vocational Expert's testimony that jobs existed in sufficient numbers in the regional and national economy for Plaintiff to perform at medium level of exertion or lower levels of exertion. We agree with the Defendant that, irrespective of 204.00, there was substantial evidence to support the ALJ's finding that Plaintiff was not disabled under the Act.

Finally, the Plaintiff claims that the ALJ erred by not including the limitations recommended in Dr. Shahid's residual functional capacity evaluation and the restrictions imposed by Plaintiff's anxiety-related disorder in the hypothetical she posed to the Vocational Expert. Furthermore, Plaintiff argues that the ALJ ignored the Vocational Expert's testimony that no jobs

---

determine that he or she can also do sedentary and light work." 20 C.F.R. § 416.967(c).

would exist if Plaintiff required more than the traditional two breaks plus lunch per day. (R. 154).

Plaintiff contends that Dr. Shahid's residual functional capacity evaluation was the only RFC the ALJ relied on.  A review of the ALJ's decision and the record does not support Plaintiff's contention.  Clearly, the ALJ relied upon Dr. Mussoline's functional capacity evaluation findings that Plaintiff could not only lift more than 25 pounds, but could lift 50 pounds over 30 times. (R. 92). Therefore, the hypothetical reflected all of Plaintiff's physical limitations according to the medical record as determined by the ALJ.  Furthermore, we find no merit to the Plaintiff's argument that the ALJ ignored his mental impairments when forming the hypothetical question to the VE.  The ALJ asked the Vocational Expert about employment limited to simple routine tasks away from hazards and that do not involve heights to compensate for Plaintiff's anxiety, to the extent Plaintiff's limitations from his anxiety were supported by the record. (R. 153).  Plaintiff was only found to have a mild restriction on his activities of daily living due to his anxiety-related disorder (R. 108), and the ALJ formulated her question to the Vocational Expert accordingly.

The Plaintiff also argues that the ALJ erred in not following the Vocational Expert's testimony that he could not work since he required more than the traditional two breaks plus lunch. A hypothetical question need only include limitations supported by the record.  *Chrupcala v. Heckler*, 829 F.2d 1269, 1276 (3d Cir. 1987).  Here, Plaintiff's assertions regarding his need to urinate many times an hour was not supported by the record; thus, the ALJ was correct by not including this limitation in the hypothetical to the VE.  No medical source opined that the Plaintiff needed multiple breaks a day because of his need to urinate.  *See Burns v. Barnhart*, 312 F.3d 113, 129-30 (3d Cir. 2002) (providing that an allegation of reduced functional capacity, without medical

17

evidence or a diagnostic opinion supporting the allegation, did not trigger a duty on the part of the ALJ to incorporate the limitation in the hypothetical question to the vocational expert). The only medical evidence offered to substantiate this claim was an office note which listed some of Plaintiff's subjective complaints. (R. 124-125). Although Plaintiff indicated he would supplement this record, no new evidence was presented. (R. 150). Thus, there was no medical evidence in the record to support Plaintiff's claim that he needed to urinate multiple times an hour. In fact, the only evidence on this issue came from Dr. Shihad, who determined that Plaintiff did not suffer from urinary incontinence. (R. 93). Moreover, while Plaintiff complained of the need to urinate frequently, due to his medications, the ALJ found that the Plaintiff's subjective complaints were overstated and inconsistent with the clinical and diagnostic findings in the record. (R. 14). *Rutherford v. Barnhart*, 399 F.3d 546, 555 (3d Cir. 2005) (providing that an ALJ need only convey a claimant's credibly established limitations to the vocational expert). Accordingly, the ALJ did not err in ignoring the Vocational Expert's response to an unsupported hypothetical question regarding Plaintiff's need for more breaks than the traditional ones.

**V. Recommendation.**

Based on the foregoing, it is respectfully recommended that Plaintiff's appeal be **DENIED**.


                                               **s/ Thomas M. Blewitt**

                                               **THOMAS M. BLEWITT**

                                               **United States Magistrate Judge**

**Dated: June 15, 2007**

IN THE UNITED STATES DISTRICT COURT

FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOHN F. BOHOVICH, | : | CIVIL ACTION NO. **3:CV-06-1710** |
| | : | |
|   Plaintiff | : | (Judge Caputo) |
| | : | |
|   v. | : | (Magistrate Judge Blewitt) |
| | : | |
| MICHAEL J. ASTRUE, | : | |
| Commissioner of | : | |
| Social Security, | : | |
| | : | |
|   Defendant | : | |

## NOTICE

**NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing

**Report and Recommendation** dated **June 15, 2007.**

Any party may obtain a review of the Report and Recommendation pursuant to Rule 72.3, which provides:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within ten (10) days after being served with a copy thereof.  Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections.  The briefing requirements set forth in Local Rule 72.2 shall apply.  A judge shall

20

make a *de novo* determination of those portions of the report or
specified proposed findings or recommendations to which objection
is made and may accept, reject, or modify, in whole or in part, the findings
or recommendations made by the magistrate judge.  The judge, however,
need conduct a new hearing only in his or her discretion or where
required by law, and may consider the record developed before the
magistrate judge, making his or her own determination on the basis
of that record.  The judge may also receive further evidence, recall
witnesses or recommit the matter to the magistrate judge with
instructions.

s/ Thomas M. Blewitt

**THOMAS M. BLEWITT**

**United States Magistrate Judge**

**Dated: June 15, 2007**